IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| UNITED STATES OF AMERICA, | No. 15- _____ - 01/02-CR-W- _____ |
|---|---|
| Plaintiff, | **COUNT ONE:** |
| | **8 U.S.C. § 1324(a)(1)(A)(iii)** |
| v. | **Harboring Illegal Aliens** |
| | **Class D Felony** |
| MARTIN GHAMBARYAN (1) | |
| [DOB: 10/25/1985], | NMT 5 Years Imprisonment |
| | NMT $250,000 Fine |
| MIKAYEL V. ABRAHAMYAN (2) | Alternative Fine of NMT Twice the |
| a/k/a "Mike" | Amount of Criminally Derived Property |
| [DOB: 09/22/1980], | NMT 3 Years Supervised Release |
| | $100 Special Assessment |
| Defendants. | Order of Restitution |

**I N D I C T M E N T**

**THE GRAND JURY CHARGES THAT:**

At all times material and relevant to this Indictment:

**COUNT ONE**
**(Harboring Illegal Aliens)**

1. Defendants Martin Ghambaryan and Mikayel V. Abrahamyan are Armenian nationals. Armenia became an independent nation in 1991, having formerly been part of the Soviet Union.

2. Defendant Martin Ghambaryan legally entered the United States on a J-1 visa. Based on an asylum request, he is now a lawful permanent resident.

3. Defendant Mikayel V. Abrahamyan legally entered the United States on a diversity visa and is a lawful permanent resident in the United States.

4. MGM Union, LLC (MGM), was incorporated in the State of Missouri on June 24, 2008. Corporate documents filed with the State of Missouri list defendant Martin Ghambaryan

as the organizer and registered agent of MGM, and state that MGM was organized to provide janitorial services, with 195 Meadowbrook 3-3, Branson, Missouri 65616, listed as the address for MGM.

5.	On March 30, 2009, defendant Martin Ghambaryan opened a business checking account for MGM at Liberty Bank in Branson, Missouri. The assigned account number was XXXXXXX264.

6.	Seasonal Labor Solutions, LLC (SLS) was incorporated in the State of Missouri on August 4, 2009. Corporate documents filed with the State of Missouri list defendant Mikayel V. Abrahamyan as the organizer and registered agent of SLS, and state that SLS was organized to transact any lawful business in Missouri, with 34 Golf Shores Drive, Room 18, Branson, Missouri 65616, listed as the address for SLS.

7.	On August 21, 2009, defendant Mikayel Abrahamyan opened a business checking account for SLS at Ozark Mountain Bank in Branson, Missouri. The assigned account number was XXXXXX037.

8.	Defendants Martin Ghambaryan and Mikayel V. Abrahamyan knowingly allowed other persons – whose identities are known to the grand jury – to assert *de facto* control over MGM and SLS and operate MGM and SLS as labor leasing companies that supplied workers to various businesses in and around the Branson, Missouri area, such as hotels, restaurants, golf courses, and entertainment venues.

9.	The *de facto* operators of MGM applied to the United States Department of Labor, Employment and Training Administration, and to the United States Citizenship and Immigration Services, for the authorization that would allow MGM to employ alien (non-United States citizens) workers with H-2B visas.

10. An H-2B visa is a non-immigrant visa granted to aliens seeking to work in the United States on a temporary or seasonal non-agricultural work basis. An employer seeking to employ alien workers with H-2B visas must verify that a legitimate employment opportunity exists and that no United States workers are available or willing to accept the position. The employer is not required to individually name each temporary alien worker it wishes to employ; instead the employer can submit a request for multiple, unnamed, alien workers as long as each alien will perform the same type of work on the same terms and conditions, in the same occupation, in the same area of intended employment, during the same period of time. Certifications to hire alien workers with H-2B visas are issued to the employer, rather than to the alien worker, and the certifications are not transferable from one employer to another employer. If an employer causes an alien worker on an H2-B visa to work for an employer other than the petitioning employer which received the labor certification, the alien's work authorization and immigration status is rendered invalid, and the alien worker is subject to deportation for violating the terms and condition of the H2-B visa.

11. MGM's application to employ alien workers with H-2B visas was denied, and MGM never received authorization to employ alien workers with H-2B visas. No one acting on behalf of SLS ever even applied to the United States Department of Labor, Employment and Training Administration, and to the United States Citizenship and Immigration Services, for the authorization that would allow SLS to employ alien workers with H-2B visas.

12. Even though MGM and SLS never received legal authorization to employ alien workers with H-2B visas, the *de facto* operators of MGM and SLS routinely employed alien workers with H-2B visas at both MGM and SLS, thereby placing the alien workers in an illegal

employment status, and rendering the alien workers subject to deportation for violating the terms and conditions of their visas.

13. The *de facto* operators of MGM and SLS also employed undocumented aliens who were not legally entitled to be in the United States, much less be employed.

14. These alien workers, whether they were undocumented or had some form of work visa, were typically required to live in certain hotels and apartments in the Branson area, creating a situation where the workers had to make a rent payment to the *de facto* operators of MGM and SLS. These alien workers also were dependent on the *de facto* operators of MGM and SLS for transportation to and from their living quarters to their jobs, and were transported in vans provided by the *de facto* operators of MGM and SLS.

15. Workers often ended up owing large debts to the *de facto* operators of MGM and SLS, which debts were then deducted from the workers' paychecks, leaving the workers with minimal take home pay. The *de facto* operators of MGM and SLS routinely allowed alien workers to remain on the payroll following expiration of a temporary work visa. The *de facto* operators of MGM and SLS then collected fees from the alien workers based on the promise of obtaining extensions of the temporary work visa, but routinely failed to do so, leaving the alien workers in an illegal employment status. The *de facto* operators of MGM and SLS used the alien workers' illegal employment status, and the threat of potential removal and deportation from the United States, as a way to compel the alien to continue working.

16. Defendants Martin Ghambaryan and Mikayel V. Abrahamyan, knew, and acted in reckless disregard of the fact that the *de facto* operators of MGM and SLS routinely employed alien workers with H-2B visas at both MGM and SLS, thereby placing the alien workers in an

illegal employment status, and rendering the alien workers subject to deportation for violating the terms and conditions of their visas.

17. Defendants Martin Ghambaryan and Mikayel V. Abrahamyan, knew, and acted in reckless disregard of the fact that the *de facto* operators of MGM and SLS also employed undocumented aliens who were not legally entitled to be in the United States, much less be employed.

18. Between April 27, 2009, and December 28, 2009, the *de facto* operators of MGM funneled more than $220,000.00 from the Ozark Mountain Bank account of G.M.H. Advanced Staffing Services, LLC (GMH), into MGM's business checking account number XXXXXXX264 at Liberty Bank in Branson, Missouri. Said money was then used to pay the alien workers illegally employed by and harbored by MGM.

19. Between January 8, 2010, and November 2, 2010, the *de facto* operators of SLS funneled more than $490,000.00 from the Ozark Mountain Bank account of GMH into SLS's business checking account number XXXXXX037 at Ozark Mountain Bank in Branson, Missouri. Said money was then used to pay the alien workers illegally employed by and harbored by SLS.

## The Charge

20. The factual allegations in paragraphs 1 through 19 are incorporated herein by reference.

21. Between on or about April 27, 2009, and November 2, 2010, within the Western District of Missouri and elsewhere, defendants Martin Ghambaryan and Mikayel V. Abrahamyan, knowingly and in reckless disregard of the fact that aliens were in the United States in violation of law: (a) concealed, harbored, and shielded numerous illegal aliens

from detection; (b) aided and abetted the *de facto* operators of MGM Union, LLC, and Seasonal Labor Solutions, LLC, to conceal, harbor, and shield said illegal aliens from detection; and (c) conspired with the *de facto* operators of MGM Union, LLC, and Seasonal Labor Solutions, LLC, to conceal, harbor, and shield said illegal aliens from detection.

All in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(iii), 1324(a)(1)(A)(v)(I) and 1324(a)(1)(A)(v)(II).

A TRUE BILL.

/s/ Helen A. Chaffin
FOREPERSON OF THE GRAND JURY

/s/ Phillip Eugene Porter
Phillip Eugene Porter
Deputy United States Attorney

Dated:   7/8/15
Kansas City, Missouri

- 6 -

Case 4:15-cr-00227-RK   Document 1   Filed 07/08/15   Page 6 of 6